J-S25013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL PAUL JACOBS | : | |
| | : | |
| Appellant | : | No. 127 WDA 2022 |

Appeal from the Order Entered January 12, 2022
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0002122-2011

BEFORE: BENDER, P.J.E., DUBOW, J., and KING, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED: SEPTEMBER 16, 2022**

Appellant, Michael Paul Jacobs, appeals *pro se* from the trial court's January 12, 2022 order denying his petition for writ of *habeas corpus*, in which he challenged the constitutionality of his designation as a Sexually Violent Predator ("SVP") under the revised version of Subchapter I of the Sexual Offenders Registration and Notification Act ("SORNA II"), 42 Pa.C.S. §§ 9799.10-9799.42. After careful review, we affirm.

The facts underlying Appellant's convictions are not pertinent to the issues he raises herein. We need only note that on June 3, 2013, Appellant pled guilty to statutory sexual assault (18 Pa.C.S. § 3122.1) and unlawful contact with a minor (18 Pa.C.S. § 6318(a)(1)). He was sentenced that same day to 18 to 36 months' incarceration. His statutory sexual assault conviction also subjected him to a 25-year registration requirement as a Tier II sex offender under the prior version of SORNA in effect at that time ("SORNA I").

Notably, during the plea proceeding, the Commonwealth stated – without objection from Appellant – that as part of his plea agreement, Appellant would be required "to obtain a SORNA [e]valuation and follow any recommended treatment, and registration requirements." N.T. Plea, 6/3/13, at 3. Accordingly, after his plea and sentencing hearing, Appellant was assessed by the Sexual Offenders Assessment Board. The Commonwealth thereafter filed a praecipe for an SVP hearing, which was held on November 30, 2013, and February 7, 2014. On February 7, 2014, the court issued an order deeming Appellant an SVP, thereby subjecting him to a lifetime registration requirement. Appellant did not file an appeal.

Instead, over three years later, Appellant filed a *pro se* petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546, challenging the legality of his SVP designation in light of **Commonwealth v. Muniz**, 164 A.3d 1189, 1223 (Pa. 2017) (holding that the registration requirements of Subchapter H of SORNA I, as applied retroactively, were punitive and unconstitutional under the *ex post facto* clauses of the United States and Pennsylvania Constitutions),[1] and **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017) (holding that the statutory mechanism for designating a

_____

[1] Our Supreme Court has abrogated **Muniz** to the extent that it held that a defendant must prove that he was actually disadvantaged by a retroactively-applied law to demonstrate it is *ex post facto*. **Commonwealth v. Santana**, 266 A.3d 528, 536 (Pa. 2021) ("The United States Constitution does not require a defendant to prove that he, in fact, was disadvantaged by the retroactively applied law.").

defendant an SVP under SORNA I violated the United States Supreme Court's decisions in ***Alleyne v. U.S.***, 570 U.S. 99 (2013),[2] and ***Apprendi v. New Jersey***, 530 U.S. 466 (2000)).[3]   Appellant's PCRA petition was ultimately dismissed on June 29, 2018.  This Court affirmed on appeal, and our Supreme Court denied Appellant's subsequent petition for permission to appeal.  ***See Commonwealth v. Jacobs***, 217 A.3d 446 (Pa. Super. 2019) (unpublished memorandum), *appeal denied*, 222 A.3d 752 (Pa. 2019).

In response to ***Muniz*** and ***Butler***, the Pennsylvania General Assembly amended SORNA I by enacting Act 10 on February 21, 2018, and Act 29 on June 12, 2018, which are collectively known as SORNA II.  ***See*** Act of Feb. 21, 2018, P.L. 27, No. 10 ("Act 10"); Act of June 12, 2018, P.L. 140, No. 29 ("Act 29").  SORNA II now divides sex offenders into two subchapters: (1) Subchapter H, which applies to an offender who committed a sexually violent offense on or after December 20, 2012 (the date SORNA I became effective); and (2) Subchapter I, which applies to an individual who committed a sexually violent offense on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired, or whose registration requirements under a former sexual offender registration law have not

---

[2] ***Alleyne*** holds that "facts that increase mandatory minimum sentences must be submitted to the jury" and found beyond a reasonable doubt.  ***Id.*** at 106.

[3] ***Apprendi*** held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  ***Id.*** at 490.

expired. Appellant is now subject to the SVP provisions under Subchapter I of SORNA II.

On August 11, 2021, Appellant filed the *pro se* petition for writ of *habeas corpus* that underlies his present appeal. Therein, he challenged the constitutionality of his SVP designation under SORNA II. Appellant also filed a petition for court-appointed counsel. The trial court denied that request, and conducted a hearing on Appellant's petition for writ of *habeas corpus*, at which Appellant acted *pro se*.[4] On January 12, 2022, the court issued an order and opinion denying Appellant's petition for writ of *habeas corpus*.

_____

[4] On February 11, 2022, our Court issued an order to the trial court to clarify whether Appellant was entitled to counsel at the hearing on his petition for writ of *habeas corpus* under **Commonwealth v. Fowler**, 930 A.2d 586, 591 (Pa. Super. 2007) ("It is … well-settled that the PCRA provides the sole means for obtaining collateral review, and that any petition filed after the judgment of sentence becomes final will be treated as a PCRA petition") (internal citation omitted), and Pa.R.Crim.P. 904(D) ("On a second or subsequent petition, when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, and an evidentiary hearing is required as provided by [Pa.R.Crim.P.] 908, the judge shall appoint counsel to represent the defendant."). The trial court responded with a letter explaining that Appellant was not proceeding under the PCRA and, thus, Rule 904(D) did not apply. **See** Trial Court Response, 2/23/22, at 1 (unnumbered). The court explained that Appellant was challenging the constitutionality of his SVP designation and, thus, his filing a petition for writ of *habeas corpus* was permissible under **Commonwealth v. Lacombe**, 234 A.3d 602, 618 (Pa. 2020) (declining "to find the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes"), and **Commonwealth v. Elliott**, 249 A.3d 1190, 1193 (Pa. Super. 2021), *appeal denied*, 263 A.3d 241 (Pa. 2021) (concluding that under **Lacombe**, "the applicability of SORNA II may be challenged outside the PCRA. Therefore, the trial court erred by construing Appellant's challenge to his [registration and notification] requirements as an untimely PCRA petition"). **Id.** The court also
*(Footnote Continued Next Page)*

Appellant filed a timely, *pro se* notice of appeal. That same day, he also filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court thereafter filed a "Memorandum in Lieu of Statement of the Court Pursuant to Pa.R.A.P. 1925(a)" indicating that it was relying on the rationale set forth in its January 12, 2022 opinion that accompanied its order denying Appellant's petition.

_____

observed that under *Com. ex rel. Frey v. Banmiller*, 159 A.2d 237, 238 (Pa. Super. 1960), the appointment of counsel is not required in the context of a writ of *habeas corpus* because such proceedings are civil in nature. *Id.* at 2 (unnumbered). Accordingly, the trial court concluded that Appellant was not entitled to representation in litigating his petition for writ of *habeas corpus*.

We agree with the trial court. Rule 904(D) applies to proceedings under the PCRA. Here, Appellant appropriately raised his challenge to the constitutionality of his SVP designation under SORNA II in a petition for writ of *habeas corpus* and, therefore, Rule 904(D) does not automatically apply. To the extent one could argue that the rule should apply to challenges to the sex-offender registration requirements, Appellant makes no such argument on appeal. Moreover, while Appellant's second issue relates to the validity of his guilty plea, he is essentially asking us to enforce, under a contract theory, the 25-year-registration-requirement provision that was ostensibly part of his plea agreement. *See* Appellant's Brief at 23 ("[A]t the time of Appellant's June 3, 2013, negotiated guilty plea and sentencing, Appellant entered his plea to the charges with the expectation that he would be classified as a Tier [II] … Offender, which would require him to register under SORNA [II] as a sexual offender for a period of twenty-five (25) years, which is contractual in nature."). This Court has held that "a collateral petition to enforce a plea agreement is regularly treated as outside the ambit of the PCRA and under the contractual enforcement theory of specific performance." *Commonwealth v. Snook*, 230 A.3d 438, 444 (Pa. Super. 2020). Therefore, that aspect of Appellant's petition for writ of *habeas corpus* is also not subsumed by the PCRA, and Rule 904(D) does not automatically apply to necessitate counsel. Accordingly, we do not discern any error in the court's decision not to appoint counsel in this case.

In Appellant's *pro se* brief to this Court, he presents the following three issues for our review, which we reproduce *verbatim*:

I.  Whether the trial court erred in not finding that the procedural irregularities in this particular case violated the Appellant's Fourteenth Amendment Due Process Clause that guarantees fair notice and enforces the protection against double jeopardy of the Fifth Amendment under the incorporation doctrine?

II.  Whether the parties to the plea agreement was reasonably understood to be the terms of the agreement?

III.  Whether the RNC[5] requirements, including his SVP designation, under Subchapter I, violate the Appellant's due process protection through an unconstitutional utilization of irrebuttable presumptions infringing upon his right of reputation and the protection of double jeopardy under the incorporation doctrine?

Appellant's Brief at 9-10 (unnecessary capitalization omitted).

We begin by recognizing that, "[o]rdinarily, an appellate court will review a grant or denial of a petition for writ of *habeas corpus* for abuse of discretion, but for questions of law, our standard of review is *de novo*, and our scope of review is plenary." **Commonwealth v. Judge**, 916 A.2d 511, 521 (Pa. 2007) (citations omitted). "When an appellant challenges the constitutionality of a statute, the appellant presents this Court with a question of law." **Commonwealth v. Howe**, 842 A.2d 436, 441 (Pa. Super. 2004) (citation omitted). "A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the

_____

[5] We believe the acronym "RNC" refers to the registration, notification, and counseling requirements of SORNA II.

- 6 -

constitution. Thus, the party challenging the constitutionality of a statute has a heavy burden of persuasion." *Id.* (citation omitted).

Here, Appellant first argues that "procedural irregularities" in his case violated his due process rights and the prohibition against double jeopardy. Specifically, he takes issue with the fact that he pled guilty and was sentenced on June 3, 2013, yet the court thereafter granted the Commonwealth's praecipe for an SVP hearing, and ultimately designated Appellant an SVP subject to lifetime registration on October 30, 2013. *See* Appellant's Brief at 17. According to Appellant, the SVP assessment must be conducted **before** sentencing and, therefore, his due process rights and double jeopardy protections were violated when his assessment took place after his sentencing in this case. *See id.* at 18; *see also* 42 Pa.C.S. § 9799.24(a) ("**Order for assessment.--**After conviction but before sentencing, a court shall order an individual convicted of an offense specified in [section] 9795.1 (relating to registration) to be assessed by the board. The order for an assessment shall be sent to the administrative officer of the board within 10 days of the date of conviction.") (emphasis in original).[6] Appellant concludes that this procedural error renders his SVP designation "void *ab initio* and not [e]nforceable…." Appellant's Brief at 21.

---

[6] This provision, which is part of SORNA I, has been replaced by nearly identical language in SORNA II. *See* 42 Pa.C.S. § 9799.58(a). We cite to SORNA I, as it was in effect at the time of Appellant's conviction and sentencing.

Relatedly, Appellant contends in his second issue that the Commonwealth breached his plea agreement by seeking and ultimately obtaining his designation as an SVP, which subjected him to a lifetime registration requirement rather than the allegedly bargained-for registration requirement of 25 years. Appellant insists that "[t]here was no mention during the guilty plea colloquy that [he] would have to undergo a[n SVP] evaluation or that an SVP designation would change his tier and registration requirements from [25] years to lifetime." *Id.* at 23. Consequently, Appellant claims that "the plea agreement [was] breached…." *Id.* at 28.

Third, Appellant challenges the constitutionality of his SVP designation under Subchapter I of SORNA II. Specifically, he argues that SORNA II imposes an "irrebuttable presumption" that SVPs "pose a high risk of engaging in further offenses even after being released from incarceration." *Id.* at 30. Appellant insists that this presumption "violates due process because it [i]s not universally true and a reasonable alternative means of ascertaining that presumed fact is available." *Id.* at 30-31 (citation omitted); *see also In re J.B.*, 107 A.3d 1, 14-15 (Pa. 2014) (reiterating that "irrebuttable presumptions are violative of due process where the presumption is deemed not universally true and a reasonable alternative means of ascertaining that presumed fact are available"). Therefore, he concludes that his SVP designation is unconstitutional.

In assessing Appellant's issues, we have reviewed the briefs of the parties, the certified record, and the applicable law.[7] We have also analyzed the thorough opinion of the Honorable Scott O. Mears of the Court of Common Pleas of Westmoreland County. We conclude that Judge Mears' well-reasoned opinion accurately and completely addresses Appellant's claims, and we discern no error in Judge Mears' conclusion that each of his three issues are meritless. **See** TCO at 18-25 (rejecting Appellant's claims that his designation as an SVP violated his due process rights and protections against double jeopardy, and/or constituted a breach of his guilty plea); **id.** at 6-18 (discussing the history of sexual-offender registration requirements and deeming meritless Appellant's claims that his SVP designation under SORNA II is unconstitutional). Accordingly, we adopt Judge Mears' opinion as our own and affirm the order denying Appellant's petition for writ of *habeas corpus* for the reasons set forth therein.

Order affirmed.

---

[7] We note that the Commonwealth treats Appellant's claims as cognizable under the PCRA, and insists that we lack jurisdiction to review them because they are untimely. **See** Commonwealth's Brief at 5-6. For the reasons set forth in footnote 1, **supra**, we disagree. Nevertheless, no relief is due for the reasons set forth herein.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  09/16/2022

## IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA
### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
                                )
v.                              )
                                )     No. 2122 C 2011
                                )
MICHAEL PAUL JACOBS             )

### OPINION AND ORDER

AND NOW, to wit, this 11th day of January, 2022, after review and consideration

of the Defendant's Petition for Writ of Habeas Corpus, filed on August 11, 2021, an

evidentiary hearing held on October 14, 2021, and the Defendant's Memorandum of Law

in Support of the Petition for Writ of Habeas Corpus filed on October 26, 2021, the Court

issues this Opinion and Order, setting forth as follows:[1]

### OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY:

The Defendant was charged by Criminal Information on July 14, 2011, with

Statutory Sexual Assault, 18 Pa.C.S.A. §3122.1, a second-degree felony; Unlawful

Contact with a Minor, 18 Pa.C.S.A. §6318(a)(1), a second-degree felony; and Corruption

of Minors, 18 Pa.C.S.A. §6301(a)(1), a first-degree misdemeanor. The charges were

filed after he admitted to police that he had engaged in sexual relations with a fourteen-

year-old girl in January of 2010, when he was eighteen years old. On June 3, 2013, the

---

[1] By Order of Court, dated October 14, 2021, the Court ordered the Defendant to file his brief, in defense of his Writ, within thirty (30) days, and the Commonwealth to respond within thirty (30) days thereafter. The Defendant filed a timely brief. The Commonwealth filed no brief.

1

Defendant entered into a negotiated guilty plea before the Honorable Debra Pezze.[2]

During the colloquy, with Judge Pezze, Assistant District Attorney Rebecca Calisti,

Defense Counsel Timothy Dawson, and the Defendant present, the following exchange

took place:

> MS. CALISTI: Your Honor, it is going to be 18 to 36 months at Count 1, state incarceration, costs and fees, defendant is to obtain a SORNA evaluation and follow any recommended treatment, and registration requirements. He is to obtain Sex Offenders treatment, no contact direct or indirect with Megan Hoyle, no unsupervised contact with minors under the age of 18. Your Honor, Count 2 is no further sentence. And count 3, I will nolle pros Count 3, Your Honor.
>
> THE COURT: Is this a Tier II with 25 year registration?
>
> MS. CALSITI: Yes, Your Honor.
>
> THE COURT: We have to indicate that on the court order. And this is yours and your client's full and complete understanding?
>
> MR. DAWSON: It is, Your Honor.

(Guilty Plea Hr'g Tr., Jun 3, 2013, 3:10 – 4:7.)

After reviewing the terms of the agreement, Judge Pezze asked the defendant if he

understood his trial and appeal rights, what the Commonwealth would have to prove if

his case went to trial, and what the maximum penalty would be if he were convicted. (Id.

at 5: 19 – 22, 6: 17 – 25, and 7: 1 – 3.) The Defendant responded that he understood, and

that he was pleading guilty to the charges. (Id. at 7: 4 – 7.) The judge accepted the plea

and recommendation. (See Id. at 7: 20 – 24.) In accordance with the negotiated plea, an

Order of Court was entered on June 3, 2013. Judge Pezze found the Defendant to be a

Tier II sex offender and ordered him to be incarcerated for eighteen (18) to thirty-six (36)

months at a state correctional facility, with credit for time served from June 15, 2011.

---

[2] The Honorable Rita Hathaway took over the handling this matter upon Judge Pezze's death in 2016, and the undersigned took over Judge Hathaway's caseload in 2020.

(Sent. Ord. of Ct., Jun. 3, 2013.) On the form order, a box was checked in which Judge Pezze noted that part of "the sentence is deferred pending Megan's Law assessment." (Id.) There was no mention during the guilty plea colloquy that the Defendant would have to undergo a Sexually Violent Predator (hereinafter referred to as "SVP") evaluation or that an SVP designation would change his tier and registration requirement from twenty five years to lifetime. (Id.) The Defendant filed neither post-trial motions nor an appeal to the Sentencing Order.

On August 23, 2013, the Commonwealth filed a praecipe requesting that an SVP hearing be scheduled "in accordance with 42 Pa.C.S.A. §9795.4," which stated:

> Order for Assessment—After conviction *but before sentencing*, a court shall order an individual convicted of an offense specified in section 9795.1 (relating to registration) to be assessed by the board. The order for an assessment shall be sent to the administrator's office of the board within ten days of the conviction. (emphasis added).[3]

42 Pa.C.S.A § 9799.41(Expired Dec. 20, 2012, pursuant to 42 Pa.C.S.A. § 9799.4.)

A two (2) – day SVP hearing took place on November 20, 2013 and February 7, 2014, before the Honorable Gary Caruso. By Order of Court, dated February 7, 2013, the Defendant was found to be a Tier III sexually violent predator subject to lifetime registration requirements. (Ord. of Ct., Feb. 7, 2013.) The Defendant did not file an appeal.

On October 2, 2017, the Defendant filed a *pro se* Petition pursuant to the Post Conviction Collateral Relief Act (hereinafter referred to as "PCRA"), in which he

---

[3] On the praecipe, the ADA cited the wrong statutory authority for requesting an SVP hearing. 42 Pa.C.S.A. §9795.4 expired December 20, 2012, pursuant to 42 Pa.C.S.A. §9799.41, and was deemed unconstitutional by Commonwealth v. Neiman, 83 A.3d 603 (Pa. 2013) and Commonwealth v. Derhammer, 173 A.3d 723 (Pa.2017). The appropriate statutory authority for requesting an assessment at the time of the Defendant's conviction was 42 Pa.C.S.A §9799.24. The error is irrelevant as the language of both statutory provisions is the same.

3

challenged the legality of his sentence. Timothy Andrews, Esq., was appointed as PCRA counsel. Attorney Andrews filed an amended PCRA Petition on January 21, 2018, in which he argued that the Defendant's designation as an SVP was unconstitutional in light of the Supreme Court holding in Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017) (Amend. PCRA Pet., Jan. 24, 2018, ¶5.) The Court did not address the merits of the Defendant's argument. Instead, it dismissed the Defendant's PCRA petition in an Opinion and Order dated June 22, 2018, finding that it did not have jurisdiction to address the Defendant's patently untimely petition.[4] (Opin. and Ord. of Ct., Jun. 22, 2018.) The Defendant, through his newly-appointed counsel, James Robinson, Esq., appealed the Court's dismissal of his PCRA petition on June 29, 2018.

In his Concise Statement, the Defendant alleged that the trial court abused its discretion in dismissing his petition as "both [Sex Offender Registration and Notification Act, 42 Pa.C.S. §9799.10-9799.41, hereinafter referred to as] SORNA and the sentencing mechanism pertaining to sexually violent predators have been declared unconstitutional pursuant to Commonwealth v Muniz, 164 A.3d 1189 (Pa.2017) and Commonwealth v. Butler (Butler I), 173 A.3d 1212 (Pa.Super. 2017) (Def's Con. Stmt. of Mat.'s Comp. of on App., Jul. 20, 2018, ¶12.) The Defendant further argued that because Muniz prohibits the application of SORNA, the previous versions of Megan's Law II cannot be applied.

> [S]ince Muniz prohibits the application of the SORNA provisions, the Defendant maintains that the previous versions of Megan's Law cannot be applied, because when SORNA was passed, it included the Sunset provision, which provided for the expiration of the prior registration provisions under Megan's Law III on the date of SORNA's effective date.

---

[4] Despite the fact that Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017), created a substantive "new constitutional right," as defined in the exceptions to the PCRA timeliness restrictions, 42 Pa.C.S.A. §9545(b)(1)(iii), it was not held to apply retroactively. See Commonwealth v. Murphy, 180 A.3d 402 (Pa.Super. 2018). For that reason, the Court found that the Defendant had not overcome the timeliness barrier.

4

> See 42 Pa.C.S.A. §9799.41. Being that the previous Megan's Law requirements expired on the effective date of the SORNA statute, they cannot be applied to the Defendant's sentence merely because of the determination that SORNA was unconstitutional.

(Id at ¶14.) On May 30, 2019, the Superior Court affirmed the trial court's dismissal of the Defendant's PCRA petition, finding that the Pennsylvania Supreme Court had not held that Muniz applied retroactively, a requirement for overcoming the stringent timeliness restrictions. On December 31, 2019, the Supreme Court denied the Defendant's Petition for Allowance of Appeal.

On August 16, 2021, the Defendant filed a *pro se* Petition for Writ of Habeas Corpus, in which he raised the following issues:

1. Whether the invalidation of Megan's Law III (the law in effect at the time of his offense) by Commonwealth v. Neiman, 84 A.3d 603 (Pa. 2013), removed the statutory authority for his conviction and SVP designation, thus rendering his designation as an SVP is unconstitutional;

2. Whether the registration, notification, and counseling (hereinafter referred to as "RNC") requirements, including his SVP designation, under Subchapter I of SORNA, violate his due process protection through the unconstitutional utilization of irrebuttable presumptions infringing upon his constitutional right of reputation; and

3. Whether the court erred in designating him an SVP after he was convicted and sentenced on the predicate offense, contrary to the express language of Section 9799.24, which requires an assessment of SVP designation after conviction but *before* sentencing.

## II. DISCUSSION:

### A. Jurisdiction of the Court:

The Writ of Habeas Corpus is typically used to determine whether a petitioner is entitled to immediate release from an unlawful confinement. Commonwealth v. ex rel

5

Powell v. Rosenberry, 645 A.2d 1328 (Pa.Super. 1994). It is an extraordinary remedy that is available only after other remedies have been exhausted or are ineffectual or nonexistent. Commonwealth v. Dept. of Corrections v. Reese, 774 A.2d 1255 (Pa.Super. 2001). All motions filed after a judgment of sentence is final are to be construed as PCRA petitions. Commonwealth v. Fowler,930 A.2d 586, 591 (Pa.Super. 2007). The PCRA has subsumed other forms of post-conviction relief, including *habeas corpus* and *coram nobis*. See Commonwealth v. Taylor, 65 A.3d 462, 465-66 (Pa.Super. 2013). However, the Supreme Court of Pennsylvania recently held in Commonwealth v. Lacombe, 234 A.3d 602 (Pa. 2020) that neither the PCRA, nor any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes. Lacombe, 234 A.3d at 617-18. Because the registration requirements mandated by SORNA are non-punitive and merely collateral consequences of the criminal sentence, a challenge to the requirements mandated by Subchapter I of SORNA III pertains to a collateral consequence of one's criminal sentence and does not fall within the purview of the PCRA." Commonwealth v Smith, 240 A.3d 654, 658 (Pa.Super. 2020). "Since the RNC requirements are merely civil collateral consequences of a criminal conviction, and there are no other methods by which the Defendant may challenge the registration requirements, they may be challenged by way of a petition for *habeas corpus*." Commonwealth v Elliott, 249 A.3d 1190, 1194 (Pa.Super. 2021).

### B. Chronological Legal History of Pennsylvania's Statutory Reporting, Notice and Counseling (RNC) Requirements for Sexual Offenders:

Since Megan's Law I was first enacted in 1995, the laws imposing reporting, notification and registration requirements on sex offenders have been the target of

6

numerous constitutional challenges and statutory amendments.[5] Therefore, a brief recitation of the chronology of Pennsylvania's sex offender statutes is necessary before addressing the Defendant's constitutional challenges to his SVP designation and lifetime RNC requirements. Deemed "constitutionally repugnant," the provisions of Megan's Law I that presumed all sex offenders were sexually violent predators, and placed the burden of proof on the offender to overcome that presumption, were struck down in Commonwealth v. Williams, 733 A.2d 593 (Pa. 1999) (Williams I). Later that same year, in a companion case to Williams I, the Court reviewed Megan Law I's RNC requirements, and found that their time for reporting (ten years) and distribution of information to local police were limited in application, and thus, were neither punitive nor violative of *ex post facto* protections.[6] See Commonwealth v. Gaffney, 773 A.2d 616 (Pa. 1999).

To address the challenges raised in Williams I and Gaffney, the General Assembly enacted Megan's Law II, 42 Pa.C.S. §§9791-9799.7 (expired), on May 10, 2000. In addition to disposing of the SVP presumption, Megan's Law II also altered the registration requirements for all convicted offenders, regardless of their SVP classification. Under Megan's Law II, any offender convicted of a predicate offense, whether or not he was deemed a Sexually Violent Offender, was required to: (1) register his current address or intended address with the state police upon release from incarceration; (2) inform the state police within ten (10) days of a change in residence;

---

[5] For Megan's Law I, see Act of Oct. 24, 1995, P.L. 1079, No. 24 (Spec. Sess. No. 1)(as amended 42 Pa.C.S. §§9791-9799.6 ("Megan's Law I") The General Assembly reposited Megan's Law in Title 42 of Pa's Consolidated Statutes at Subchapter H of the Sentencing Code.

[6] "The *ex post facto* prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Commonwealth v. Morazzoni, 241 A.3d 451 (Pa.Super. 2020)(quoting Commonwealth. v. Rose, 127 A.3d 794,798 (Pa. 2015).

(3) register within ten days with a new law enforcement agency after establishing residence in another state; and (4) attend "at least monthly" counseling sessions in a program approved by the Board. 42 Pa.C.S. §§9791-9799.7. The law provided for either a ten (10) - year or lifetime registration requirement based upon the predicate offense. Id.

In 2003, the Supreme Court was asked to determine "whether [Megan's Law II's] RNC requirements, applicable to individuals deemed SVPs, constituted criminal punishment," in violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2013) and Alleyne v. United States, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). See Commonwealth v. Williams, 832 A.2d 962, 964 (Pa. 2004) (Williams II). To determine whether the RNC requirements were punitive, thus constituting criminal punishment, the Williams II court applied the Mendoza-Martinez[7] two-part test, which requires the following assessment: first, "that the General Assembly's "intent was to impose punishment, and, [then] if not, [second] whether the statutory scheme [was] nonetheless so punitive either in purpose or effect as to negate the legislature's non-punitive intent." Williams II, 832 A.2d at 971. After applying the two-part test, including the seven-factors delineated in the second prong of the test,[8] the Court concluded that the RNC requirements did not violate Apprendi and Alleyne. Id.

By Act 152 of 2004, Megan's Law III was enacted, making substantive legal changes to Megan's Law II by, *inter alia*, amending the Crimes Code to create various criminal offenses for failing to comply with RNC requirements; directing the creation of

---

[7] Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

[8] The second part of the Mendoza-Martinez test requires consideration of seven factors: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play on a finding of scienter; (4) whether its operation will promote traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assigned to it; and (7) whether it appears excessive in relation to the alternative purpose assigned. Mendoza-Martinez, 372 U.S. at 168-69.

8

a searchable computerized database of all registered sexual offenders; amending the duties of the Sexual Offenders Assessment Board (hereinafter referred to as "SOAB"); allowing a sentencing court to exempt a lifetime sex offender registrant, or SVP registrant, from inclusion in the database after twenty (20) years, if certain conditions were met; establishing mandatory registration and community notification procedures for SVPs; and requiring registered sex offenders to submit to fingerprinting and being photographed when registering at approved registration sites.[9]

On December 20, 2011, the General Assembly enacted SORNA, 42 Pa.C.S. §§9791-9799.9, in response to the federal Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248, 42 U.S.C. §§16901-16991, which mandates that states impose on sex offenders certain tier-based registration and notification requirements or lose federal funding. To comply with this federal legislation, SORNA provided for the expiration of Megan's Law III, as of December 20, 2012, the effective date of SORNA. 42 Pa.C.S. §9791. Megan's Law III was struck down in 2013, by the Pennsylvania Supreme Court in Commonwealth v. Neiman, 84 A.3d 603 (Pa. 2014), on the basis that its passage violated the single subject rule. Id.

SORNA failed to withstand constitutional scrutiny. On June 19, 2017, the Pennsylvania Supreme Court in Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017), found the RNC requirements of SORNA I to be punitive in nature, and held that the retroactive application of the registration and reporting requirements violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions. Id. at 1219-1223. "SORNA has increased the length of registration, contains mandatory in-person reporting requirements, and allows for more private information to be displayed on-line." Id. at

---

[9] 18 Pa.C.S. §§9795.1 to 9799.4 (expired Dec. 20, 2012, pursuant to Pa.C.S.A. §9799.41).

9

1215. "SORNA is much more retributive in effect than Megan's Law II, along with the fact SORNA's provisions act as deterrents for a number of predicate offenses, all weigh in favor of finding SORNA punitive." Id. at 1216. In recognizing conflicting evidence regarding recidivism rates of adult sex offenders, the court did not base its decision on that aspect of policy consideration; instead finding persuasive appellant's argument that "both the state and offenders have an interest in the finality of sentencing, as well as the claim that the Pennsylvania Constitution's special treatment of the right to reputation justifies greater protections under the Pennsylvania *ex post facto* clause. Id. at 1213.

That same year, in Commonwealth v. Butler, 173 A.3d 1212 (Pa.Super. 2017) (Butler I), the Superior Court found that *all* SORNA registration requirements were punitive, and therefore, the SVP designation was also unconstitutional as violative of Apprendi and Alleyne.

In response to Muniz and Butler I, the Legislature amended SORNA I and enacted "Act 10" of 2018, Act of Feb. 21, 2018, P.L. 27 ("Act 10"). "Act 10" split SORNA into two (2) subchapters based upon the date of the offender's predicate offense. Revised Subchapter H, which retains many of the provisions of SORNA I, applies to offenders who committed crimes after the effective date of SORNA I (12/20/12). Subchapter I, which imposes less onerous requirements, in an attempt to address the concerns raised by Muniz, applies to offenders who committed their offenses after April 22, 1996, but before December 20, 2012 (the date of enactment of SORNA I). Subchapter I was designed to ensure that those required to retroactively register under SORNA would still have to do so, despite the ruling in Muniz. See Commonwealth v. Mickley. 240 A.3d 957 (Pa.Super. 2020).

10

Butler I was reversed by the Supreme Court in Commonwealth v. Butler (Butler II), 226 A.3d 972 (Pa. 2020), where the Court distinguished the RNC requirements of SVPs from those of non-SVPs, and held that the SVP requirements were non-punitive. The Court based its decision on the fact that SVPs suffer from a mental abnormality or a personality disorder that makes them more likely to continue to commit sexually violent offenses. Butler II, 226 A.3d at 991. "Since the RNC requirements for an SVP designation are based upon a mental abnormality or personality disorder and not criminal intent, the statutory requirements do not constitute criminal punishment." Id. at 990-991. Because neither subchapter "H" nor "I," as applicable to SVPs, were found to be criminal punishment, Apprendi and Alleyne did not apply.

> RNC requirements do not constitute criminal punishment and therefore the procedure for designating individuals as SVPs under Section 9799.24(e), is not subject to the requirements of Apprendi and Alleyne and remain constitutionally permissible.

Id. at 976.[10]

On June 16, 2020, the Supreme Court in Commonwealth v. Torsillieri, 232 A.3d 567 (Pa. 2020), addressed whether the RNC requirements under Revised Subchapter H violate due process through the utilization of two irrebuttable presumptions: (1) that all sexual offenders pose high risks of recidivation; and (2) that the tier-based registration system of Revised Subchapter H protects the public from alleged dangers of recidivist offenders. Id. At 587. Finding that all of the factors[11] for an irrebuttable presumption

---

[10] Butler II only concerned the registration provisions of revised Subchapter H applicable to SVPs. Therefore, it did not speak to the constitutionality of the tiered registration provisions applicable to non-SVPs. Commonwealth v. Eswin Rolando Garcia Ispache, 2021 WL 5919095 (Pa.Super. 2021)(slip Opinion).

[11] The test for an unconstitutional irrebuttable presumption requires three factors: "(1) the existence of a presumption that impacts "an interest protected by the due process clause; (2) a presumption that 'is not universally true; and (3) the existence of reasonable alternatives to ascertain presumed fact." Torsillieri, 232 A.3d at 586.

11

were met, the trial court concluded that SORNA's RNC provisions involved an unconstitutional irrebuttable presumption on its face and as applied to the appellant. Id. at 587. The Supreme Court refused to address the merits of the constitutional challenge finding that "a review of the trial court's conclusions clearly reveals that the court's analysis of each of the three prongs of the irrebuttable presumption doctrine relies heavily upon the scientific evidence presented by Appellee ... and a remand is necessary to allow the parties to present additional argument and evidence to address whether a scientific consensus has developed to overturn the recidivation rates and the effectiveness of the tier-based system." Id. at 587-488.

Recently, in Commonwealth v. Lacombe, 234 A.3d 602 (Pa. 2020), the Pennsylvania Supreme Court held that the RNC requirements of Subchapter I of SORNA II do not constitute criminal punishment. In Commonwealth v. Elliott, 249 A.3d 1190 (Pa.Super. 2021), the Superior Court cited the holdings in Butler II, and Lacombe in support of its decision that the RNC requirements of Subchapter I, as applied to those offenders who committed sexual offenses prior to the effective date of SORNA II, are not violative of the *ex post facto* clause, as the RNC requirements of subchapter I are less stringent than Subchapter H. Elliott, 249 A.3d at 1194.

> Because Subchapter I's RNC requirements applicable to SVPs are less burdensome than are subchapter H's requirements for non-SVPs (those offenders who committed a sexually violent offense on or after December 20, 2012, the effective date of SORNA II), it must be the case that Subchapter I's RNC requirements for SVPs do not constitute criminal punishment given our decision in Butler II.

Id. at 1194.

Finally, in Commonwealth v. Morgan, 258 A.3d 1147 (Pa.Super. 2021), the Court reviewed, as a matter of first impression, the issue of whether Subchapter I's SVP

12

designation violates the right to reputation as provided in the Pennsylvania Constitution. Despite finding that the SVP designation and concomitant RNC requirements infringe upon a defendant's right to reputation, the Court held that the procedure for determining SVP status - SOAB assessment and hearing - comports with due process, and therefore, is constitutional, and does not violate the right to reputation under our Commonwealth's Constitution. Id. at 1157.

While it is clear that the SVP designation and RNC requirements under SORNA's Subchapter I (Lacombe, Elliott, and Morgan), and SVP designation under Subchapter H (Butler II) are constitutional, the requirements for non-SVP offenders remains unclear.

### C. Analysis of Defendant's Claims:

#### 1. Whether Defendant's SVP Designation and Lifetime Registration Requirements are Unconstitutional in light of the Neiman Court's Invalidation of Megan's Law III:

Despite the Supreme Court's decision in Butler II, *supra*, that the RNC requirements of SORNA II, as applied to SVPs, are constitutional and do not violate the *ex post facto* rule, the Defendant still contends that his SVP designation and lifetime reporting requirements are illegal. He questions how he can be required to register as an SVP offender when there was no statutory authority existing at the time of his offenses under which he could be required to register, because Megan's Law III was declared unconstitutional and void *ab initio* by the Neiman Court. Neiman, 84 A.3d at 607. In support of his contention, he cites Glen-Gery Corp. v. Zoning Hearing Board, 907 A.2d 1033, 1037 (Pa. 2006), in which the Pennsylvania Supreme Court stated that "[i]t is well established law… a statute held unconstitutional is considered void in its entirety and inoperative as if it had no existence from the time of its enactment." Id. The Defendant's

13

position is similar to that raised by the Defendant in <u>R.F.M. v. Pennsylvania State Police</u>, 2021 WL 4515355 (Cmwlth. Ct. 2021) (slip opinion), to which the Commonwealth Court responded:

> [A]s to Petitioner's "<u>Neiman</u>-based" challenge, he essentially argues that because Megan's Law III was found to be unconstitutional, no registration law applied to him when he was sentenced, and therefore, there could be no subsequent law requiring him to register. Subchapter I belies his argument ... Subchapter I of SORNA II very clearly applies to those "required to register with the [PSP] under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired. 42 Pa.C.S. §9799.52. Moreover, section 9799.75 clearly addresses the Neiman decision, stating:
>
> (a)Registration.—Nothing in this subchapter shall be construed to relieve an individual from the obligation to register with the {PSP} under this subchapter if the individual:
>
> (1) committed a sexually violent offense within this Commonwealth.
>
> (2) was required to register with the {PSP} under a former sexual offender registration law of this Commonwealth that was enacted before December 20, 2012, or would have been required to register with the {PSP} under the act of November 24, 2004 (P.L. 1243, No. 152)... but for the decision by the Pennsylvania Supreme Court in ... Neiman. 42 Pa.C.S.§9799.75.

<u>Id.</u> (citations omitted.)

By Defendant's own account, and based upon the date of his predicate offenses, he was subject to registration under Megan's Law III. The invalidation of that law has no effect on his duty to report, as SORNA I clearly provides for the application of its RNC requirements to those individuals who committed sexually violent offenses within this Commonwealth and who were required, under previous statutes (Megan's Law II specifically) to register and report to the PSP. <u>Id.</u> The decision in Neiman does not vitiate the sex offender's responsibility to report, register and notify, as the General Assembly intended SORNA II's Subchapter I to address the fall-out from <u>Neiman's</u>

14

invalidation of Megan's Law III. Id. Accordingly, under Subchapter I of SORNA II, which applies to those offenders who committed offenses under Megan's Law III, the Defendant remains obligated to comply with his ordered lifetime RNC requirements. As Subchapter I provides the statutory authority under which the Defendant is obligated to comply and has been found to be constitutional and not violate the *ex post facto* rule (See Lacombe, 234 A.3d at 626), the Defendant's argument that his reporting requirements are illegal fails.

> **2. Whether the RNC Requirements, including his SVP Designation, under Subchapter I, Violate the Defendant's Due Process Protection through an Unconstitutional Utilization of Irrebuttable Presumptions Infringing upon his Right of Reputation.**

Unlike the U.S. Constitution, the Pennsylvania Constitution specifically protects the right to reputation as a fundamental right in Article I, Section 1, which provides:

> [a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa.Const. Art I, §1.

In a recent decision cited by the Defendant in this case, the Pennsylvania Supreme Court addressed the constitutionality of Revised Subchapter H of SORNA. It considered whether the Legislature's use of the irrebuttable presumption that all sexual offenders pose high risks of sexual recidivism violates the constitutional right to reputation. See Commonwealth v. Torsilieri, 232 A.3d 567 (Pa. 2020). After applying the test for an unconstitutional irrebuttable presumption,[12] the Supreme Court vacated the trial court's

---

[12] See Footnote 10.

15

ruling that Subchapter H was unconstitutional and remanded it for further development of the record on the constitutional challenge.

> Unfortunately, the procedural posture of this case prevents tidy resolution of the matter by this Court. While Appellee presented a colorable argument that the General Assembly's factual presumptions have been undermined by recent scientific studies, we are unable to affirm the trial court's several conclusions finding Revised Subchapter H unconstitutional. We note that the evidence of record does not demonstrate a consensus of scientific evidence as was present to find a presumption not universally true in J.B., 107 A.3d at 17-19, nor the "clearest proof" needed to overturn the General Assembly's statements that the provisions are not punitive, which we have noted "requires more than merely showing disagreement among relevant authorities," Lee, 935 A.2d at 885 ... [T]he courts of this Commonwealth have the inherent authority as a co-equal branch to strike legislative acts if they violate the rights protected by our Constitutions. J.B., 107 A.3d at 14 (citing Nixon v. Com. Dept. of Pub. Welfare, 839 A.2d 277, 286 (Pa. 2003)). we emphasize that all cases are evaluated on the record created in the individual case. Thus, a court need not ignore new scientific evidence merely because a litigant in a prior case provided less convincing evidence. Indeed, this Court will not turn a blind eye to the development of scientific research, especially where such evidence would demonstrate infringement of constitutional rights. Nevertheless, we also emphasize that it will be the rare situation where a court would reevaluate a legislative policy determination, which can only be justified in a case involving the infringement of constitutional rights and a consensus of scientific evidence undermining the legislative determination. We reiterate that while courts are empowered to enforce constitutional rights, they should remain mindful that "the wisdom of a public policy is one for the legislature, and the General Assembly's enactments are entitled to a strong presumption of constitutionality rebuttable only by a demonstration that they clearly, plainly, and palpably violate constitutional requirements." Shoul, 173 A.3d at 678.

Commonwealth v. Torsilieri, 232 A.3d 567, 595–96 (Pa. 2020)

The Defendant also cites Commonwealth v. Muhammad, 241 A.3d 1149 (Pa.Super. 2020), in support of his argument that his RNC requirements are illegal because they based upon an irrebuttable presumption. However, like the appellant in Torsilieri, the appellant in Muhammad was not an SVP. She was a Tier I offender, who committed no acts of a sexual nature. Thus, the Court found that SORNA's provision that sexual offenders pose high risks of recidivating was an irrebuttable presumption that

16

clearly, palpably, and plainly violated her constitutional rights to reputation. Id. at 1159.

Neither Torsilieri nor Muhammad addressed the presumption as to an SVP; therefore, their holdings and discussions are distinguishable and inapposite.

In Commonwealth v. Morgan, 258 A.3d 1147 (Pa.Super. 2021), as a matter of first impression, the Superior Court addressed whether SVP designations under SORNA violate the right to reputation

> [I]n Pennsylvania, reputation is an interest that is recognized and protected by our highest state law: our Constitution. Sections I and II of Article I make explicit reference to "reputation," providing the basis for this Court to regard it as a fundamental interest which cannot be abridged without compliance with constitutional standards of due process and equal protection. R. v. Commonwealth Dep't of Pub. Welfare, 636 A.2d 142, 149 (1994).

Morgan, 258 A.3d 1152.

Because Subchapter I directs the Pennsylvania State Police to "develop, implement and maintain a process which allows members of the public to receive electronic notification when an individual required to register under Subchapter I moves into or out of a user-designated location," the Court found that the RNC requirements infringed on the defendant's right of reputation. Id. However, the analysis did not stop there. Next, the court weighed the infringement of the right against.the interest sought to be achieved by the government. Id. at 1153. To achieve its dual goals of ensuring public safety without creating another unconstitutionally punitive scheme, the General Assembly made a number of material changes to the operation of SORNA II. Id. The court in Lacombe reviewed those changes, and discussed the stated purpose of Subchapter I as follows:

> The General Assembly declared that the purpose of Subchapter I is to "[p]rotect the safety and general welfare of the people of this

17

Commonwealth by providing for registration, community notification and access to information regarding sexually violent predators and offenders who are about to be released from custody and will live in or near their neighborhood." 42 Pa.C.S. §9799.51(b)(1). Such purpose is based on the General Assembly's finding that "sexually violent predators and offenders pose a high risk of engaging in further offenses even after being released from incarceration or commitments, and protection of the public from this type of offender is a paramount government interest. "Id. §9799.51(a)(2).

Lacombe, 234 A.3d at 625.

Because an SVP is an individual convicted of one or more sexually violent offenses, whom the Sexual Offender Assessment Board (SOAB) has determined to have "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses,"[13] the Morgan Court concluded that the SVP designations and RNC requirements under Subchapter I are narrowly tailored to its compelling state purpose of protecting the public from "those who have been found to be dangerously mentally ill" Morgan, 258 A.3d at 1157. Thus, it was found to be constitutional.

While the case law supports the Defendant's argument that his SVP designation infringes on his right to reputation, the government's infringement on his right is justified to protect the safety and general welfare of the people of this Commonwealth. His ultimate argument therefore fails.

> ### 3. Whether the Defendant's Designation as an SVP is in Violation of the Express Language of 42 Pa.C.S.A. § 9795.4, and therefore, Unconstitutional.

At the time of the Defendant's conviction and sentencing on June 3, 2013, SORNA I was the effective sex offender statute. Under SORNA I, sexual offenses were

---

[13] 42 Pa.C.S. §9799.58.

18

classified in a three-tiered system, composed of Tiers I, II and III. 42 Pa.C.S.A. §9799.14. The Defendant's sexual offense of "Statutory Sexual Assault" was deemed a Tier II offense. 42 Pa.C.S.A. §9799.14(c) (1.1). The registration period for such an offense was twenty five (25) years. 42 Pa.C.S.A. §9799.15(2). The procedure for assessing whether a convicted sexual offender was a sexually violent predator was set forth, in relevant part, at Section 9799.24, which stated:

> (a) Order for assessment.—After conviction but before sentencing, a court shall order an individual convicted of an offense specified in §9795.1 (relating to registration) to be assessed by the board. The order for an assessment shall be sent to the administrative officer of the board within ten days of the conviction...

> (d) Submission of report by Board.—The board shall have 90 days from the date of conviction of the individual to submit a written report containing its assessment to the district attorney...

> (e) Hearing.—

> (1) A hearing to determine whether the individual is a sexually violent predator shall be scheduled upon the praecipe filed by the district attorney...

> (3) At the hearing prior to sentencing the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator...

42 Pa.C.S.A. §9799.24.

On June 3, 2013, the Defendant entered his negotiated guilty plea to Statutory Sexual Assault, the Tier II predicate offense under SORNA I. During the guilty plea hearing, the Assistant District Attorney provided the Court with the terms of the plea agreement:

> MS. CALISTI: Your Honor, it is going to be 18 to 36 months at Count 1, state incarceration, costs and fees, defendant is to obtain a SORNA evaluation and follow any recommended treatment and registration requirements. He is to obtain sex offenders treatment, no direct or indirect contact with [the victim], no unsupervised contact with minors under the age of 18.

(Guilty Plea Hr'g Tr., Jun 3, 2013, 3:10 – 20.)

19

The Court questioned the Assistant District Attorney on the appropriate tier and commensurate Megan's Law registration period, then asked Defendant's counsel if his client's and his understanding were consistent:

THE COURT: Is this a Tier 2 with 25 year registration?

MS. CALISTI: Yes, your Honor.

THE COURT: We have to indicate that on the order. And this is yours and your client's full and complete understanding?

MR. DAWSON: It is, your Honor.

(Id. at 3:4 – 4:7.)

In accordance with the Defendant's negotiated plea, Judge Pezze entered an order sentencing the Defendant at Count 1, the statutory sexual assault count, to 18 months to 36 months incarceration, with credit for time served. (Ord. of Ct., Jun. 3, 2013.) There was no further sentence at Count 2, the Unlawful Contact with a Minor charge. (Id.) Count 3, the Corruption of Minors charge, was dismissed. (Id.) Additionally, part of the sentence was to be deferred pending a Megan's Law Assessment. (Id.) The Defendant was deemed a Tier II offender and ordered to comply with Megan's Law registration requirements and provide photo, fingerprint, palm print and DNA samples to the State Police. (Id.) The Defendant was to have no indirect or direct contact with the victim and/or unsupervised contact with minors. (Id.) An assessment by the SOAB was conducted and a report was forwarded to the District Attorney's Office on August 20, 2013. Based upon the SOAB's findings,[14] Attorney Calisti filed a Praecipe on August

---

[14] Since SOAB reports are confidential and not public record pursuant to Pa.R.Crim.P. 703, the findings will not be noted herein.

20

23, 2013, in which she requested that a hearing be held to determine whether the Defendant was an SVP.

The SVP hearing took place before the Honorable Gary Caruso on November 20, 2013 and February 7, 2014. Judge Caruso found the Defendant to be a Tier III, SVP, with lifetime registration requirements.[15] The Defendant was ordered to serve the remainder of his June 3, 2013 sentence. (Ord. of Ct., Feb. 7, 2014.) The Defendant filed neither post-sentence motions nor a direct appeal from his conviction and sentence. He filed a counseled Amended PCRA petition on January 21, 2018, in which he raised the constitutionality of his SVP designation; however, the Court refused to consider the merits, and dismissed his petition as untimely. The Superior Court affirmed the PCRA court's dismissal.

The Defendant contends that the trial court's acceptance of the negotiated guilty plea and entry of sentence on June 3, 2013, indicating Tier II RNC requirements of twenty five years, precludes Judge Caruso's later designation of him as a Tier III SVP offender and life registrant on February 7, 2014. He believes this additional sentence from Judge Caruso was illegal, and not in accordance with the negotiated terms of his plea. As set forth above, SORNA I was the applicable sexual offender statute at the time of the Defendant's offense, and it provided the appropriate statutory procedure for sentencing a sexual offender. See 42 Pa.C.S.A. §9795.4; Commonwealth v. Baird, 856 A.2d 113 (Pa.Super. 2004). Pursuant to §9799.24, the court was required to order an SVP assessment after conviction, *but before sentencing*. See 42 Pa.C.S. §9799.24 (emphasis added). This was required because "the court, at the time of sentencing,

---

[15] The transcript of the November 20, 2013 and February 7, 2014 SVP hearings are no longer available for review by this Court; however, a copy of the SOAB Report and Recommendation, dated August 20, 2013, is available and supports Judge Caruso's finding that the Defendant was an SVP.

21

needed to be cognizant of whether the convicted individual [was] classified as a sexual offender or an SVP so that it could properly inform the offender or SVP... of his obligations under Megan's Law, which [differed] depending upon whether the individual [was] determined to be an offender or SVP." Baird, 856 A.2d at 117. While the court was obligated to order the SOAB to perform the SVP assessment, the decision to proceed with an SVP hearing was solely within the purview of the District Attorney. See 42 Pa.C.S. §9795.4(e)(1).

The Defendant contends that he was sentenced immediately following the Court's acceptance of his guilty plea, contrary to the procedure required by §9799.24. This is partly true, but it was noted, with the acknowledgement of the Defendant and his attorney, that a portion of the sentencing was to be deferred pending the Megan's Law Assessment. Clearly, it was the intent of the Court to follow the proper procedures under §9799.24 and for the Defendant to be further sentenced based upon the outcome of the SOAB assessment. The mere fact that Judge Pezze, in her Order, set forth the tier and reporting requirements for the crime to which he pled guilty, and period of incarceration, does not mean that the Court failed to follow the proper procedure. It does not provide the Defendant with a technicality upon which to vacate his SVP designation. Thus, the only question that remains to be answered is whether the imposition of the SVP designation breached the terms of the plea agreement.

> Although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards. Furthermore, disputes over any particular term of a plea agreement must be resolved by objective standards. A determination of exactly what promises constitute the plea bargain must be based upon the totality of the surrounding circumstances and involves a case-by-case adjudication... Commonwealth v. Kroh, 654 A.2d 1168, 1172 (Pa. Super. 1995.)

22

Commonwealth v. Farabaugh, 136 A.3d 995 (Pa.Super. 2016.) Whether a particular plea agreement has been breached depends on what the "parties to the agreement reasonably understood to be the terms of the agreement." Commonwealth v. Fruehan, 557 A.2d 1093, 1094 (Pa.Super. 1989). Sex offender registration

> obviously has serious and restrictive consequences for the offender, including prosecution if the requirement is violated. Registration can also affect the offender's ability to earn a livelihood, his housing arrangements and options, and his reputation. In fact, the requirements of registration are so rigorously enforced, even the occurrence of a natural disaster or other event requiring evacuation of residences shall not relieve the sexual offender of the duty to register ... [W]hen a defendant agrees to a guilty plea, he gives up his constitutional right to a jury trial, to confrontation, to present witnesses, to remain silent and to proof beyond a reasonable doubt. In negotiating a plea that will not require him to register as a sex offender, the defendant trades a non-trivial panoply of rights in exchange for his not being subject to a non-trivial restriction. Fundamental fairness dictates that this bargain be enforced. Commonwealth v. Hainesworth, 82 A.3d 444 (Pa. 2014).

Farabaugh, 136 A.3d at 1001. Whether a plea agreement has been breached depends on what the parties to the agreement reasonably understood to be the terms of the agreement. Id.

> The convicted criminal is entitled to the benefit of his bargain through specific performance of the terms of the plea agreement. Thus, a court must determine whether an alleged term is part of the parties' plea agreement ... If the answer to that inquiry is affirmative, then the convicted criminal is entitled to specific performance of the term.

Commonwealth v. Moose, 245 A.3d 1121, 1130 (Pa.Super. 2021) (quoting Commonwealth v. Commonwealth v Martinez, 147 A.3d 517, 533 (Pa. 2016). The Courts have made a distinction between punitive and non-punitive registration requirements in determining what the court must consider before enforcing the terms of the plea agreement. Moose, 245 A.3d at 1133.

23

> While our Supreme Court has held Subchapter H was non-punitive as applied to SVPs, it has not yet issued a definitive ruling regarding the constitutionality of the registration requirements as applied to non-SVPs.

Butler II 226 A.3d at 987.

"A petitioner's negotiated guilty plea precludes subsequent application of a punitive registration scheme because it would effectively alter the petitioner's agreed-upon sentence..." Moose, 245 A.3d 1133. However, when a registration scheme is not punitive, such as an SVP designation, it constitutes a collateral consequence of a guilty plea. See Commonwealth v. Hart, 174 A.3d 660, 667 (Pa.Super.2017). Further, because non-punitive registration requirements are not criminal punishment, they do not materially alter a negotiated term establishing a defendant's sentence. See Lacombe, 234 A.3d at 606. Under these circumstances, a defendant must demonstrate that nonregistration, or a specific term of registration, was part of the negotiated plea. See Hainesworth, 82 A.3d at 448. "When a defendant sought to avoid sex offender registration requirements based on a negotiated plea, courts could only grant relief in cases where non-registration or a specified period of registration was a term of the agreement." Commonwealth v. Nase, 104 A.3d 528, 532-33 (Pa.Super. 2014).

In this case, after considering the circumstances as a whole, it appears that the requirement to undergo an SVP evaluation and follow the recommendations was a collateral consequence of the guilty plea. Furthermore, unlike the cases where the appellate courts found the lesser reporting requirements or non-requirements to be a bargained-for part of the agreement, (Farabaugh, Leidig and Moose), there was never any representation or indication that the Defendant's 25-year Tier II registration was a limit. To the contrary, Attorney Calisti mentioned, during her recitation of the terms of the plea,

24

that the Defendant would also have to "obtain a SORNA evaluation and follow any recommended treatment and registration requirements." (Guilty. Plea Hr'g, Jun. 3, 2013, 3: 10 – 20.) For these reasons, the Defendant's argument fails.

## III. CONCLUSION:

For the reasons set forth herein, none of the three (3) issues raised by the Defendant in his Petition for Writ of Habeas Corpus have merit. Thus, the Petition is DENIED.

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
)
v. )
) No. 2122 C 2011
)
MICHAEL PAUL JACOBS )

## ORDER OF COURT

AND NOW, therefore, this 10th day of January, 2022, for the reasons set forth in the Court's Opinion, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the Defendant's Petition for Writ of Habeas Corpus is DENIED.

BY THE COURT:

_____
Scott O. Mears, Judge

ATTEST:

_____
Clerk of Courts

cc: File
Office of the District Attorney
Michael Paul Jacobs, 7 West 4th Avenue, Latrobe, PA 15650
Peter Flanigan, Court Administrator's Office

26